## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DORIS RAMIREZ,** | : | **CIVIL NO. 4:09-CV-247** |
| | : | |
| **Plaintiff,** | : | **(Judge McClure)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MARK BAYER, et al.,** | : | |
| | : | |
| **Defendants,** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This case, like many cases, begins with a commonplace event.

In November of 2007, the plaintiff, Doris Ramirez, was an inmate confined at the State Correctional Institution, Muncy. On November 17, 2007, Ramirez sat down at a wooden picnic bench in the prison and a large splinter became lodged in the posterior portion of her upper right thigh.

According to Ramirez, this commonplace occurrence has now inspired events which have constitutional significance. Ramirez has filed a *pro se* civil rights action alleging that her constitutional rights were violated as a result of the medical treatment she received for this splinter, both from prison medical staff and from other, outside medical professionals. (Docs. 1, 13 and 15.) Liberally construed, this complaint alleges, in broad terms, that prison and private medical staff displayed both negligence in their treatment of this splinter and violated Ramirez's Eighth Amendment right to

be free from cruel and unusual punishment, by displaying deliberate indifference to her serious medical needs. (Id.)

While she alleges that she was the victim of "deliberate indifference" by medical personnel, in her complaints Ramirez actually details an extensive and on-going course of treatment that she received from health care professionals for this splinter. According to the plaintiff, after the splinter became lodged in her thigh, she immediately complained to prison officials. (Docs. 13 and 15.) Following an initial examination at the prison, Ramirez was taken to the emergency room of a local hospital, the Muncy Valley Hospital, arriving at the hospital 6 hours after she first reported this splinter to prison staff. (Id., "This happened Nov. 17, 2007. I was left to suffer for 6 hours before I was taken to Muncy Valley Hospital.") At the hospital emergency room, Ramirez was seen by one of the named defendants in this action, Margaret Carpenter, RN. (Id.) Carpenter administered a local anesthesia, and then removed a large piece of this splinter from Ramirez's buttocks (Id.). While Ramirez alleges that she still complained of pain at the hospital following this procedure, according to her complaint, Carpenter examined her and reported that she could find no further evidence of a splinter lodged in Ramirez. Carpenter then finished treating her wound, and Ramirez was returned to the prison.(Id.)

Within a few days Ramirez reported an infection at this wound site. (Id.) She was admitted to the prison infirmary and treated by prison staff for the next eight days. (Id.) During this time, Ramirez alleges that she was seen by several other named defendants, including Dr. Weisner, Dr. Rodriguez, and Dr. Familio. (Id.) According to Ramirez, each of these physicians provided her with care and treatment. For example, Dr. Weisner cleaned, dressed and drained her wound site. (Id.) Dr. Rodriguez, in turn, examined her leg searching for any additional remnants of the splinter, but was unable to locate any splinter fragments at the wound site. (Id.). Dr. Familio also examined Ramirez, and like Dr. Rodriguez, was unable to locate any additional splinter fragments lodged in the plaintiff.(Id.)

Still in pain despite these medical efforts, Ramirez states that she requested, and received, an x-ray which also failed to disclose any other splinters in her thigh. (Id.) Because Ramirez was still complaining of her injuries, on November 23, 2007 she was transported for a second time to the Muncy Valley Hospital, where she was seen by yet another doctor at that facility, Dr. Mark Beyer. (Id.) Ramirez recites that, while she was in his care, Dr. Beyer examined her wound, and reported that he, too, could find no further evidence of a splinter. (Id.) Dr. Beyer also ordered blood tests for Ramirez, and prescribed antibiotics for her infection.(Id.)

Ultimately, Ramirez was released from the infirmary and returned to prison population and her work in the prison kitchen.(Id.) While at work, Ramirez felt a sharp

pain at her wound site, and discovered a wood fragment protruding from the wound. She reported to the prison infirmary, where a nurse was able to locate and remove five other fragments of the splinter that had lodged in her posterior thigh. (Id.)

Ramirez alleges that this detailed course of care and treatment which she described in her complaint "is clearly malpractice, neglect and deliberate indifference." (Id.) Having claimed that the medical treatment she received was so inadequate that it constituted cruel and unusual punishment in violation of the Eighth Amendment to the constitution, Ramirez then demanded wide-ranging relief, including $1,500,000 to compensate her for pain, suffering and emotional distress, as well as an injunction directing the removal of splinter-prone wooden picnic tables from all state correctional institutions. (Id.)

The defendants have now all filed motions to dismiss Ramirez's complaint. (Docs. 38, 40, 44.) These motions have been fully briefed by the parties, and are now ripe for resolution. (Docs. 41, 45, 46, 47.) For the reasons set forth below, it is recommended that the motions to dismiss be granted since Ramirez has failed to state a valid constitutional claim against any of the defendants. In light of the dismissal of the federal constitutional claims, it is further recommended, consistent with the past practice of the Court, that the Court decline to hear any ancillary state negligence or medical malpractice claims, and that these claims be dismissed without prejudice to Ramirez pursuing those claims in state court.

## II.    Discussion

### A.    Rule 12(b)(6)– The Legal Standard.

The defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis*. See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the Court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have

seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __ U.S.

\_\_, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words,

a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In our view, these heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether a complaint states a viable cause of action.

**B.      Ramirez May Not Maintain An Eighth Amendment Claim Against Defendants Carpenter and Beyer, The Private Medical Professionals Who Treated Her Wound**

Applying these standards, it is recommended that this *pro se* § 1983 complaint be  dismissed for failure to state a claim upon which relief can be granted. In its current form Ramirez's complaint is flawed in several fundamental respects. At the outset, the complaint lists two private persons, Dr. Beyer and Margaret Carpenter, RN, as defendants. To the extent that the complaint seeks to hold these private parties liable for civil rights violations, it fails to state a valid cause of action under 42 U.S.C. § 1983 since such cases typically require some state action under color of law. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). With respect to this requirement of state action under § 1983:

Although there is no "simple line" between state and private actors, Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288,

295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001), we have explained that "[t]he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." <u>Leshko</u>, 423 F.3d at 339 (internal quotation marks and citation omitted). To answer that question, we have outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and,(3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." <u>Mark</u>, 51 F.3d at 1142 (other alterations, internal quotation marks and citations omitted). Under any test, "[t]he inquiry is fact-specific." <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 638 (3d Cir.1995); <u>see also Crissman v. Dover Downs Entm't Inc.</u>, 289 F.3d 231, 234 (3d Cir.2002

<u>Kach v. Hose</u>, 589 F.3d 626, 646 (3d. Cir. 2009).

Moreover, in making this state action determination "the focus of our inquiry is not on whether the state exercises control over a putative state actor as a general matter, but whether the state has exercised control over the particular conduct that gave rise to the plaintiff's alleged constitutional deprivation." <u>Kach,</u> 589 F.3d at 649. Therefore, in this setting the inquiry would focus on the degree of control exercised by the state over the medical judgment of the doctor and nurse.

In this case, Ramirez has not pleaded or proven any facts which demonstrates that these privately employed medical professionals were "state actors" for purposes of liability under § 1983 when they treated her splinter wound since she has not shown that the state "exercised control over the particular conduct that gave rise to the

plaintiff's alleged constitutional deprivation." <u>Kach,</u> 589 F.3d at 649. In fact, it is

evident that the state played no role directing how Carpenter or Beyer exercised their

medical judgment in assessing and treating Ramirez's complaints. Therefore, in its

current form her constitutional claims against these private defendants are clearly

inadequate and should be dismissed.

C. **Ramirez's Allegations Fail to Establish An Eighth Amendment "Deliberate Indifference" Claims in a Prison Medical Context.**

More fundamentally, Ramirez's complaint is flawed in a more basic way since

it fails to state any deprivation of any of her constitutional rights by any named

defendant. Liberally construed, the constitutional gravamen of Ramirez's complaint

is that prison medical staff and others violated her rights under the Eighth Amendment

to the United States Constitution by displaying "deliberate indifference" to her

medical needs in the course of treating her for this splinter in her buttocks. Ramirez

faces an exacting burden in advancing this Eighth Amendment claim against prison

medical officials in their individual capacities. To sustain such a claim, Ramirez must

plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and,(2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-

defendant must actually have known or been aware of the excessive risk
to inmate safety.

Beers-Capitol v. Whetzel,256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.)  In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id . at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of her constitutional right to adequate

medical care, Ramirez is required to point to evidence that demonstrates both: (1) a serious medical need; and, (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct.

13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim,
> as it concerned [a care giver], because [the] allegations merely amounted

to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials; and, 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

<u>James</u>, 230 F.App'x. at 197-198.(citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment will be disavowed by courts since such determinations remain a question of sound professional judgment. <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (quoting <u>Bowring v. Godwin</u>, 551 F.2d 44, 48 (4th Cir. 1977)).

Judged against these standards, Ramirez's Eighth Amendment claims plainly fail. Indeed, accepting as true the factual allegations made by Ramirez in her complaint, those allegations completely refute any claim of deliberate indifference to her medical needs. Quite the contrary, the factual recitals by Ramirez–which the court

fully credits–affirmatively reveal that Ramirez received on-going medical attention from these health care professionals.

According to Ramirez, after the splinter became lodged in her upper right thigh, she immediately complained to prison officials, who examined her and then transported her to the emergency room at Muncy Valley Hospital within 6 hours after she reported this splinter to prison staff. At the hospital emergency room, Ramirez was seen by Margaret Carpenter, who administered a local anesthesia, and the removed a large piece of this splinter from Ramirez's buttocks. Carpenter then examined Ramirez and reported that she could find no further evidence of a splinter lodged in her, before treating her wound and returning her to the prison.

When Ramirez reported an infection at this wound site, she was admitted to the prison infirmary and treated by prison staff for the next eight days. During this time, Ramirez alleges that she was seen by several other named defendants, including Dr. Weisner, Dr. Rodriguez and Dr. Familio. According to Ramirez, each of these physicians provided her with care and treatment. For example, Dr. Weisner cleaned, dressed and drained her wound site. Dr. Rodriguez examined her leg searching for any additional remnants of the splinter, but was unable to locate any splinter fragments at the wound site. Dr. Familio also examined Ramirez, and like Dr. Rodriguez was unable to locate any additional splinter fragments lodged in the plaintiff. Ramirez

states that she also requested, and received, an x-ray which failed to disclose any other splinters in her thigh. Ramirez further claims that, on November 23, 2007, she was transported for a second time to the Muncy Valley Hospital, where she was seen by yet another doctor at that facility, Dr. Mark Beyer, who examined her wound, and reported that he too, could find no further evidence of a splinter. Dr. Beyer also ordered blood tests for Ramirez, and prescribed antibiotics for her infection.

Ultimately, Ramirez was released from the infirmary and returned to prison population and her work in the prison kitchen. While at work, Ramirez felt a sharp pain at her wound site, and discovered a wood fragment protruding from the wound. She reported to the prison infirmary, where a nurse was able to locate and remove five other fragments of the splinter that had lodged in her posterior thigh.

These facts, recited by Ramirez in her complaint, thoroughly rebut any allegation of deliberate indifference to her needs by prison medical staff. Rather, the complaint essentially sounds in negligence, and challenges how medical staff exercised their professional judgment in her case. As a negligence and malpractice action, this complaint fails as a constitutional claim under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's

constitutional rights.')". <u>Gindraw</u>, 967 F.Supp. at 836. Given that the allegations set forth by Ramirez, even when most liberally construed, do not rise to the level of an Eighth Amendment violation because they do not show deliberate indifference to her medical needs, her constitutional claims should be dismissed.

### D. The Court Should Not Exercise Ancillary Jurisdiction Over Any State Malpractice and Negligence Claims

The dismissal of these constitutional claims, in turn, dictates the appropriate course for the court to follow in addressing any ancillary state law negligence or malpractice claims that Ramirez may wish to pursue against these defendants. In a case such as this, where the jurisdiction of the federal court was premised on an alleged federal civil rights violation which is found not to state a cause of action upon which relief can be granted, the Court has observed that the proper course is for:

> [T]he court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-... the district court has dismissed all claims over which it has original jurisdiction."); <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims).

<u>Bronson v. White,</u> No. 05-2150, 2007 WL 3033865, at *13 (M.D.Pa. Oct. 15, 2007)(dismissing ancillary malpractice claim against dentist).

This course of action, dismissing ancillary state negligence and malpractice claims when an inmate's Eighth Amendment claims fail as an matter of law, has also been expressly endorsed by the court of appeals in <u>Ham v. Greer</u>, 269 F. App'x 149, 151 (3d Cir. 2008). In <u>Ham</u>, the appellate court approved this practice, stating in terms that are equally applicable here that:

> Because the District Court appropriately dismissed [the inmate's] <u>Bivens</u> claims, no independent basis for federal jurisdiction remains. In addition, the District Court did not abuse its discretion in declining to address the state law negligence claims. 28 U.S.C. § 1367(c)(3); <u>see United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); <u>Tully v. Mott Supermkts., Inc.</u>, 540 F.2d 187, 196 (3d Cir.1976).[1]

<u>Id</u>. at 151.

In short, without the inclusion of some further well-pleaded factual allegations, the constitutional claims set forth in this civil rights complaint contain little more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which as a legal matter] do not suffice." <u>Ashcroft v. Iqbal</u>,

---

[1]Because we believe that it would be inappropriate to exercise jurisdiction over these ancillary state law claims given our ruling on the merits of Ramirez's constitutional claim, we express no opinion on the merits of this case as a negligence or malpractice action. Nor do we express an opinion on the issue of whether Ramirez properly exhausted her administrative remedies, a matter which the parties factually dispute in their pleadings. Since Ramirez's complaint fails as a matter of law on other grounds, we need not foray into this factual dispute at this time.

127 S.Ct. at 1979. Therefore, we are compelled to recommend dismissal of this complaint.

We recognize that *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see <u>Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Since the plaintiff has failed to state a viable cause of action, and the factual and legal grounds proffered by Ramirez in support of the complaint make it clear that the plaintiff has no right to relief, granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, this case should simply be dismissed.

### III.    RECOMMENDATION

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's complaint be dismissed for the failure to prosecute and for failure to state a claim upon which relief can be granted, and the defendants' motions to dismiss (Docs. 38, 40, 44 ) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions

Submitted this 12th  day of March, 2010.

*S/Martin C. Carlson*
Martin C. Carlson
 United States Magistrate Judge